**ROBINSON COAL CO., Appellant**

v.

**Robert B. GOODALL, an Individual, Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 12, 2013.
Filed July 29, 2013.

Jeffrey T. Olup, Charleroi, for appellant.

George K. Hanna and Stephen J. Taczak, Washington, for appellee.

BEFORE: BOWES, LAZARUS, and COLVILLE,* JJ.

## OPINION BY BOWES, J.:

Robinson Coal Co. ("Robinson") appeals from the judgment entered after a nonjury verdict in favor of Appellee Robert B. Goodall ("Goodall"). We affirm.

■ On May 8, 2009, Robinson filed this civil action against Goodall. It alleged that on December 11, 1999, the parties entered a contract regarding the extraction of coal on property owned by Michaele F. Parees and Robert M. Frame and located in Robinson Township, Washington County (the "Frame Property"). Appellee owned the mineral rights to the Frame Property. The contract provided the following. Robinson acquired the right to mine Goodall's coal underlying the property, and it agreed to diligently extract all minable coal on the Frame Property to exhaustion. Any coal removed from the Frame Property that was not saleable without being washed had to be delivered to Goodall's coal washing plant. In the document, Robinson agreed to pay "a washing fee of $9.00 per ton for all Robinson coal that is washed at Goodall's washing plant[.]" Agreement, 12/11/99, at ¶ 5. Additionally, Robinson had to tender to Goodall a production royalty of $1.50 per ton of coal mined. As security for Robinson's performance of its contractual obligations, it agreed to deposit with Goodall the "sum of 50 cents per ton to be held by Goodall in a segregated, interest bearing account until completion of Robinson's mining operations on the Frame Property." *Id.* at ¶ 2. The accord made the following provision for distribution of the escrow: "Upon Robinson's completion of its mining operations on the Frame Property and payment of all of its obligations to Goodall hereunder, all funds held in the segregated account shall be divided equally between Goodall and Robinson." *Id.* at ¶ 2.

Robinson started mining operations in January 2000 and admitted in its complaint herein that it completed those activities in August 2002. During that time, Robinson placed tons of nonsaleable coal at Goodall's washing facility, which Goodall washed. Robinson averred herein that when it ceased mining operations, it left 192,000 tons of coal at Goodall's washing facility. In the present action, Robinson raised two causes of action. The first was an action in replevin seeking the return of any of its coal remaining on Goodall's land or, to the extent that Goodall had disposed of any of the 192,000 tons of coal, its fair market value. In the second count, Robinson averred a breach of contract due to Goodall's failure to disseminate one-half of the escrow funds to it in accordance with the terms of the 1999 accord. As damages, it sought one-half of the money in escrow in 2002, plus interest.

In response to the complaint, Goodall raised the defenses of the statute of limitations and *res judicata.* This latter position was premised upon the fact that Robinson previously engaged in litigation with Goodall regarding its right to one-half of the escrow funds. Specifically, in 2003, Robinson filed a breach of contract and conversion lawsuit against Goodall. At issue in that case was whether Robinson was entitled to one-half of the then existing escrow funds as well as whether Goodall converted some of the stockpiled Robinson coal located on Goodall's property.

Goodall defended the prior action, *inter alia,* by asserting that Robinson had forfeited its right to the escrowed funds because Robinson did not mine the Frame Property to exhaustion and because it re-

---

* Retired Senior Judge assigned to the Superior Court.

fused to accept the return of the washed coal that was left at Goodall's washing facility. Goodall also filed a counterclaim maintaining that Robinson breached the contract by refusing to accept the stockpiled coal, failing to deposit the sum of fifty cents per ton for all coal mined as security for it performance, and neglecting to mine the coal on the Frame Property to exhaustion.

The previous lawsuit proceeded to a jury. The jury concluded that neither party breached the contract, but it also failed to award damages to either Goodall or Robinson. The trial court in that case concluded that, based upon the finding that Robinson had not breached the contract on Goodall's counterclaim, Robinson was entitled to judgment notwithstanding the verdict as to the escrowed funds. It awarded Robinson one-half of the amount in escrow, $118,366.98, plus interest. Both parties filed appeals.

In that prior appeal to this Court, Goodall maintained that the trial court erred in entering judgment n.o.v. in favor of Robinson and awarding Robinson one-half of the escrow funds. *Robinson Coal Co. v. Goodall*, 953 A.2d 849 (Pa.Super.2008) (unpublished memorandum). We agreed with that assertion and held:

> Robinson Coal presented a claim to the jury that Goodall had breached the Agreement by not paying Robinson Coal fifty percent of the escrowed funds. In order to prevail on this claim, Robinson Coal was required to prove that it had paid Goodall for all of its obligations under the Agreement [in addition to mining the coal to completion]. Clearly, the jury considered this issue on Robinson Coal's claim against Goodall and necessarily found that Robinson Coal did not pay Goodall for all of its obligations when it concluded that Goodall did not breach the Agreement by failing

to pay Robinson Coal fifty percent of the escrowed funds. Accordingly, the trial court erred when it utilized the jury's verdict in Goodall's counterclaim, which did not include the issue of whether Robinson Coal paid Goodall for its obligations, to overturn the jury's verdict in Robinson Coal's direct claim against Goodall, in which the jury specially considered this issue.

*Id.* at unpublished memorandum at 30. We therefore reinstated the jury's verdict. Our Supreme Court thereafter denied allowance of appeal, *Robinson Coal Co. v. Goodall*, 600 Pa. 735, 963 A.2d 471 (2008), and that litigation was thus concluded.

After this present case was filed, the matter eventually proceeded to a nonjury trial. The trial court thereafter concluded that both causes of action raised herein were barred by the applicable statute of limitations. It additionally determined that the question of whether Robinson was entitled to one-half of the escrow funds under the 1999 contract was *res judicata* based upon the outcome of Robinson's 2003 litigation against Goodall. The trial court therefore entered a verdict in favor of Goodall.

In this appeal, which followed denial of Robinson's post-trial motion and entry of judgment on the verdict, Robinson raises these contentions:

1. Whether the Trial Court erred in concluding that Counts I and II of Robinson's Complaint are barred by the two-year statute of limitations set forth in 42 Pa.C.S.A. § 5524(3).

2. Whether the 21-year statute of limitations set forth in 42 Pa.C.S.A. § 5530 applies to this case.

3. Whether an abandonment of the subject coal and intent to abandon the coal, as well as open, notorious and adverse possession for the applicable statu-

tory time frame was proven in this matter.

4. Whether the Trial Court erred or abused its discretion in not considering Robinson's illegality issue as an estoppel against Defendant Goodall, precluding the assertion of several of Goodall's defenses, including the defense of the statute of limitations.

Appellant's brief at 4.

■ Initially, we note our agreement with the trial court's ruling that Appellant's contract claim was barred by *res judicata*. The doctrine of *res judicata* prevents a party from instituting litigation that has been the subject of a lawsuit. We explained the concept in *Stoeckinger v. Presidential Financial Corp. of Delaware Valley*, 948 A.2d 828, 832 n. 2 (Pa.Super.2008) (footnote omitted):

> "Res judicata" means "a thing adjudged" or a matter settled by judgment. Traditionally, American courts have used the term *res judicata* to indicate claim preclusion, i.e., the rule that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and constitutes for them an absolute bar to a subsequent action involving the same claim, demand or cause of action.

■ "Application of the doctrine of res judicata as an absolute bar to a subsequent action requires that the two actions possess the following common elements: '(1) identity of the thing sued upon; (2) identity of the cause of action; (3) identity of the parties; (4) identity of the capacity of the parties.'" *Id.* at 832 (quoting *Dempsey v. Cessna Aircraft Co.*, 439 Pa.Super. 172, 653 A.2d 679, 681 (1995) (*en banc*)). Additionally, "res judicata will bar subsequent claims that could have been litigated in the prior action, but which actually were not[.]" *Chada v. Chada*, 756 A.2d 39, 43 (Pa.Super.2000).

Herein, Robinson previously instituted an action against Goodall to recover one-half of the funds in the escrow under the same contract. The matter of the ownership of the money in escrow was litigated and decided in the prior action. The parties and their capacities were identical as well as the identity of the thing sued upon and cause of action.

■ However, the replevin action raised herein for the washed coal left at Goodall's facility is not subject to *res judicata*. The prior cause of action related to breach of contract rather than replevin, and the ownership of the coal was not litigated in that lawsuit. Nevertheless, we agree with the trial court that the statute of limitations is a complete bar to Appellant's replevin count. In this respect, Appellant argues that the statute of limitations in 42 Pa.C.S. § 5530 rather than 42 Pa.C.S. § 5524(3) applies to Robinson's count demanding return of or payment for the 192,000 tons of coal that it left at Goodall's washing plant. We first note that, unless a case involves application of the discovery rule, "whether the statute of limitations has run on a claim is generally a question of law for the trial judge. Which statute of limitations applies to a cause of action is also a matter of law for the court to determine." *Wilson v. Transport Insurance Co.*, 889 A.2d 563, 570 (Pa.Super.2005) (citations omitted).

Section 5530 provides, "The following actions and proceedings must be commenced within 21 years: An action for the possession of real property." 42 Pa.C.S. § 5530(a)(1). Section 5524(3) states: "The following actions and proceedings must be commenced within two years: .... An action for taking, detaining or injuring personal property, including actions for specific recovery thereof." 42 Pa.C.S. § 5524(3) In *Llewellyn v. Philadelphia & Reading*

*Coal & Iron Co.,* 308 Pa. 497, 162 A. 429, 430 (1932), our Supreme Court specifically held that "coal, when severed from the earth, becomes personal property[.']" This holding is logical and, contrary to Robinson's position, controlling. It is counterintuitive to characterize mined coal sitting on top of land as "real property." Since the coal in question is legally considered personal property, the trial court correctly applied the two-year statute of limitations.

In the complaint filed herein, Robinson admitted that it ceased mining operations in 2002, when all of the mined coal was left at Goodall's facility. This May 8, 2009 replevin action seeking recovery of the coal or, to the extent that it was disseminated, its value, had to be filed within two years after 2002. It is patently untimely. In light of this determination, we need not address the position raised by Robinson that it never abandoned the coal. It cannot seek recovery of the coal or its value due to expiration of the statute of limitations.

■ Robinson next asserts that the trial court should have precluded Goodall from asserting either *res judicata* or the defense of statute of limitations as to Robinson's breach of contract count seeking one-half of the amount in escrow when it ceased mining operations. This contention is premised upon Robinson's position that Goodall's coal-washing operation was purportedly "illegal." Robinson asserts that the illegality of the coal washing operation prevented Goodall from raising any defense to the present breach-of-contract cause of action.

■ "It is well settled that a contract which violates a statute is illegal and will not be enforced." *Rittenhouse v. Barclay White Inc.,* 425 Pa.Super. 501, 625 A.2d 1208, 1211 (1993). However, herein, Goodall was not seeking to enforce its

contract against Robinson; instead, Robinson was suing under that theory. Robinson fails to refer us to any authority that would permit an "illegality of contract" defense to be raised by a plaintiff when the plaintiff cannot pursue a breach of contract action in the first instance due to expiration of the statute of limitations and application of the doctrine of *res judicata.* Illegality-of-contract, by its very nature, assumes that a viable breach of contract action exists but that the contract cannot be enforced since such action would involve violation of a statute. Robinson waived this "illegality" defense by failing to raise it to Goodall's counterclaim in the previous litigation, where it could have been presented.

Judgment affirmed.